Arnold L. Fein, J.
Community School Board District No. 2 of the City of New York (Community Board) brings this article 78 proceeding, in the nature of mandamus, for an order directing respondents to perform various specific administrative duties enjoined upon them by statute. (CPLR 7803, subd. 1.) The ultimate relief sought is an allocation of funds to the Community *86 Board for the operation of cafeteria services in schools and facilities in its jurisdiction.
Issue is not joined. Respondents cross-move to dismiss this proceeding on grounds that (1) the petition fails to state a cause of action, and (2) the Commissioner of Education of the State of New York (Commissioner) has primary jurisdiction over the subject matter.
Once again the court is being embroiled, not only in questions of statutory interpretation, but in an analysis of the functions and jurisdiction of Community Boards in the light of over-all administrative policy of the City Board of Education (City Board) and the City’s fiscal processes, despite the fact that educational policy considerations, more appropriate for determination by the educational administrative .structure, are involved. (Matter of Community School Bd. Dist. No. 3 v. Board of Educ. of City of N. Y., 68 Misc 2d 826; Matter of Community School Bd. No. 3 v. Board of Educ. of City of N. Y., 68 Misc 2d 66; Valdivieso v. Community School Bd., 67 Misc 2d 1007.)
Prior to July 1,1970, the City Board had exclusive operational authority over the public schools and public school programs within the City of New York. The Legislature, in response to what it deemed the “ urban educational challenge ” (Legislative Findings, L. 1968, ch. 568, § 1), adopted a decentralization plan, embodied in Education Law, article 52-A, entitled “ New York City Community School District System ”, conferring upon community school boards general operational authority over all city schools below the high school level, including the power and duty, specifically involved in this controversy, to ‘1 operate cafeteria or restaurant services for pupils and teachers ” (Education Law, § 2590-e, subd. 7).
At present, the City Board, through its Bureau of School Lunches and Office of Business and Administration, is operating the schpol lunch program. The City Board has commissioned private studies to develop, select and implement alternate formulae for allocating school lunch funds to the community school boards. No conclusions have apparently been reached. As a consequence, the proposed budget and estimates submitted by the City Board for the fiscal year 1972-1973 contain no separate “ community board ” units of appropriation for a district school lunch program, and there appears to be no plan to allocate funds for this purpose to petitioner and other community school boards.
Petitioner now asks the court to compel respondents, the Mayor of the City of New York, Director of the Budget, the *87 City Board and the Chancellor to perform their respective functions, in accordance with the mandate of the statute, in order that the formulae be appropriately developed and the proposed budget be accordingly modified to include such appropriations and allocations.
There is merit to respondents’ contention that the problem affects more than one community school district and that the transfer of power, in this instance, as in others, must be made subject to city-wide policies to be established by‘the City Board, taking into account the varying needs among the 31 districts (cf. Kryger v. Board of Educ., 37 A D 2d 622; Matter of Community School Bd. No. 3 v. Board of Educ., 68 Misc 2d 66, 67). Pending formulation of these policies, the City Board is required to continue to operate the lunch program, albeit on a centralized basis, and the community boards must postpone the exercise of authority in this area until such policies are developed and adopted (Education Law, §§ 2590-e, 2590-f, subd. 2). However, unnecessary delay in the formulation and adoption of policies and programs cannot be allowed to avoid the mandate of the statute. The difficulty lies in fashioning a remedy where the appropriate administrative body fails, over an extended period, to take action to effectuate, as in this case, a proper transfer of authority and jurisdiction. Inaction or ineffective action cannot be used to frustrate legal rights. Otherwise, no policy becomes a policy.
Although mandamus is the proper remedy to compel the performance of an official duty, it is an extraordinary remedy, involving the exercise of a proper discretion. The judiciary is loathe to interfere with the executive department of the government, or an administrative body unless some specific act or duty which the law requires to be done is omitted. (Matter of Walsh v. La Guardia, 269 N. Y. 437, 441-442.) Petitioner has prima facie established its legal right to operate the school lunch program (Education Law, § 2590-e, subd. 7). The existence of said right is not denied. However, it is now almost three years since decentralization has been legislated and transfer of power has not yet been effected.
Petitioner has set forth recognizable grounds for relief and stated a cause of action, at least to compel the performance of the administrative duty to formulate the criteria necessary to effect decentralization of the school lunch program. "Whether the court can properly mandamus respondents under the circumstances cannot be determined on motion. It is only where the record of proof leaves no scope for the exercise of reason *88 able discretion that mandamus may issue. (Matter of Coombs v. Edwards, 280 N. Y. 361; Matter of Durr v. Paragon Trading Corp., 270 N. Y. 464, 469.) The court is not equipped or organized “ to assume a general supervisory power ” over the acts of the officials of the City and the City Board. (Matter of Walsh v. La Guardia, 269 N. Y. 437, 442, supra.) In view of the complexity of the problems, a hearing is required to determine whether respondents are effectively attempting to comply with article 52-A of the Education Law.
It is, furthermore, not a ground for dismissal on motion that petitioner failed to request such moneys in its estimates for programs initially submitted to the Chancellor under subdivision 2 of section 2590-i of the Education Law. Such failure is not, as a matter of law, a bar to its right to an allocation for the 1972-73 fiscal year. Such inaction cannot be construed as a waiver of respondents’ duty to take proper administrative action required by law. Petitioner has adequately demonstrated its efforts to obtain such action.
Respondents’ contention that the power to operate cafeteria or restaurant services is conferred on both the Chancellor and the community boards is without merit. Respondents’ reliance on Matter of Community School Bd. No. 3 v. Board of Educ. of City of N. Y. (68 Misc 2d 826, supra) is misplaced. That case correctly holds that the determination should, in the first instance, be made within the educational administrative structure. The obvious purpose of the statute is to insure that the school lunch program be continued and be centrally administered until proper procedures and formulae for transfer to the community boards are effectuated. It would appear that three years is long enough.
There is no real basis for the alarms expressed in the papers that the matter may become moot because April 15 is the final date for submission of the Mayor’s proposed budget or revisions to the City Council and Board of Estimate. Presumably the budget as submitted and adopted will contain an appropriation for school lunch programs. Nothing in the law precludes the transfer of all or part of such funds to another unit of appropriation for allocation to petitioner if found to be warranted, either by voluntary administrative action or pursuant to court direction. i
Accordingly, the motion to dismiss is denied. Respondents shall serve their answer to the petition within five days after service of a copy of the order to be entered hereon, with notice of entry. Such order shall provide for an appropriate hearing date.