In the Matter of EPHRAIM PRUZAN, Appellant, against LEWIS J. VALENTINE, as Commissioner of Police of the City of New York, et al., Respondents.

Argued March 12, 1940; decided April 16, 1940.

*Harold Riegelman, H. H. Nordlinger* and *David L. Benetar* for appellant. The law regulating the issuance of licenses to operate taxicabs in the city of New York clearly specifies the sole conditions upon which the granting of such licenses depend. Petitioner has met all of the conditions. (*People ex rel. E. C. T. Club* v. *State R. Comm.*, 190 N. Y. 31; *Breen* v. *Valentine*, 170 Misc. Rep. 590; 256 App. Div. 1066; *Transit Comm.* v. *L. I. R. R. Co.*, 253 N. Y. 345; *Dean* v. *Metropolitan Elevated Ry. Co.*, 119 N. Y. 540; *Burnside* v. *Whitney*, 21 N. Y. 148; *Miller* v. *Town of Irondequoit*, 243 App. Div. 240; 268 N. Y. 578; *Decker* v. *Goddard*, 233 App. Div. 139; *People* v. *Sommer*, 55 Misc. Rep. 55.) The refusal by a licensing officer to grant a license upon grounds not specified in the controlling statute is arbitrary as a matter of law and should be set aside. (*Matter of Small* v. *Moss*, 279 N. Y. 288; *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330; *Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157; *Matter of Executive Service Corp.* v. *Moss*, 256 App. Div. 345; *People ex rel. Cosby* v. *Robinson*, 141 App. Div. 656; *Matter of Lyons* v. *Prince*, 281 N. Y. 557; *Matter of Good Humor, Inc.*, v. *Morgan*, 171 Misc. Rep. 899.) The grounds relied on by respondents to sustain their denial of appellant's application are not sanctioned by the law, constitute arbitrary and unlawful limitations on his right to licenses and are without foundation in fact. (*Bullen* v. *Wisconsin*, 240 U. S. 625; *Superior Oil Co.* v. *Mississippi*, 280 U. S. 390; *Gregory* v. *Helvering*, 293 U. S. 465; *People ex rel. Fogarty* v. *Kaplan*, 160 Misc. Rep. 179; *People ex rel. Cosby* v. *Robinson*, 141 App. Div. 656.)

*William C. Chanler, Corporation Counsel* (*Francis J. Bloustein, Paxton Blair* and *Stanley Buchsbaum* of counsel),

for respondents. The sale and transfer of the taxicabs to petitioner not being *bona fide* and the petitioner having failed to demonstrate that he is qualified to assume the duties and obligations of a taxicab owner, the refusal to approve his application and grant him licenses was proper in all respects. (*Matter of Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60; *Martin* v. *Peyton*, 246 N. Y. 213; *Matter of Gold* v. *Wooters*, 233 App. Div. 833; *Matter of Straus* v. *Goldstein & Bros.*, 264 N. Y. 498; *Summo* v. *Snare & Triest Co.*, 166 App. Div. 425; *People* v. *Levine*, 160 Misc. Rep. 181; 250 App. Div. 741; *People* v. *Simons*, 249 App. Div. 809; 274 N. Y. 554.) Responsibility for the licensing of taxicabs is imposed on the Police Commissioner and he should be permitted to perform his duty without interference. (*People ex rel. Clapp* v. *Listman*, 40 Misc. Rep. 372; 84 App. Div. 633; *Matter of Walsh* v. *LaGuardia*, 269 N. Y. 437; *People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; *People ex rel. Wooster* v. *Maher*, 141 N. Y. 330; *People ex rel. Judge* v. *Hylan*, 200 App. Div. 430; *Bullock* v. *Cooley*, 225 N. Y. 566; *Matter of Lawrence-Cedarhurst Bank*, 247 App. Div. 528; 272 N. Y. 646; *Matter of Rudack* v. *Valentine*, 163 Misc. Rep. 326; 274 N. Y. 615; *Breen* v. *Valentine*, 170 Misc. Rep. 590; 256 App. Div. 1066; *Capitol Taxicab Co.* v. *Cermak*, 60 Fed. Rep. [2d] 608; *City of Wichita* v. *Home Cab Co.*, 141 Kan. 697; *Birmingham Interurban Taxicab Service Corp.* v. *McLendon*, 210 Ala. 525; *Fletcher* v. *Bordelon*, 56 S. W. Rep. [2d] 313; *Dallas Taxicab Co.* v. *City of Dallas*, 68 S. W. Rep. [2d] 359; *Matter of Agoglia* v. *Mulrooney*, 259 N. Y. 462.) Appellant failed to show that the refusal of the Police Commissioner to approve his application was arbitrary or unreasonable. (*People ex rel. Peixotto* v. *Bd. of Education*, 212 N. Y. 463; *Matter of Burr* v. *Voorhis*, 229 N. Y. 382; *People ex rel. Wood* v. *Board of Assessors*, 137 N. Y. 201; *Matter of Small* v. *Moss*, 279 N. Y. 288; *Message Photo-Play Co.* v. *Bell*, 179 App. Div. 13; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416; *Bullen* v. *Wisconsin*, 240 U. S. 625; *Gregory* v. *Helvering*, 293 U. S. 465.)

LEWIS, J. In this proceeding under article 78 of the Civil Practice Act we have granted leave to appeal and now review an order of the Appellate Division unanimously affirming an order of Special Term denying the appellant's application for an order directing the respondents to approve his application for licenses to operate two taxicabs in the city of New York. The appellant asserts that the respondents' action in denying his application was capricious, arbitrary and unreasonable.

Having chosen to apply at Special Term for an order to compel the performance of an alleged official duty, the appellant is required to establish a clear legal right thereto. Under such proof Special Term may determine whether in the exercise of a sound discretion it will grant or withhold the order. However, it is only where the record of proof leaves no scope for the exercise of a reasonable discretion that this court may rule, as matter of law, that there has been an abuse of that discretion. (*Matter of Coombs* v. *Edwards*, 280 N. Y. 361, 363; *Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464, 469.) We apply that test to the record now before us.

The Administrative Code of the City of New York (Laws of 1937, ch. 929) contains a legislative finding that " the taxicab industry in the city of New York is vested with a public interest because it is a vital and integral part of the transportation facilities of the city of New York and that its regulation is therefore necessary." (§ 436–2.0, subd. 1.) It enumerates certain evils and public hazards to be corrected by regulatory measures and to that end provides that the administrative control of the licensing and regulation of taxicabs shall be lodged with the Department of Police. (Administrative Code, §§ 434a–5.0; 436–2.0, subds. 2 [b], 7.)

Claiming to have purchased two taxicabs from Guardian Cab Company, Inc., the appellant applied to the Hack Bureau of the Police Department for a license for each cab. A hearing was promptly had before the respondent Fourth Deputy Police Commissioner, and thereafter the application was denied for reasons stated in the following letter:

*" September* 22, 1939.
" Mr. H. D. Pruzan,
315 West 94th Street.
New York, N. Y.

" Dear Sir: I have carefully considered your application made pursuant to the provisions of Section 436–2.0 (c-7) of the Administrative Code of the City of New York.

" You have made an application for licenses for two taxicabs allegedly purchased by you from the Guardian Cab Company, Inc.

" Under the provisions of the section referred to, transfers may be made only by a person owning two or more taxicabs to a person who owns two or more taxicabs, or who will thereafter own two or more taxicabs. The section further provides that such transfers may be made only to a person who has demonstrated to the satisfaction of the Hack Bureau that he is qualified to assume the duties and obligations of a taxicab owner. The transferee must further assume the outstanding tort liabilities of the transferor in the excess of the amount covered by any bond or policy of insurance.

" This department is of the opinion that you have not demonstrated that you are qualified to assume the duties and obligations of a taxicab owner.

" The department is further of the opinion that the alleged transfer from your vendor to you is not a *bona fide* transfer, and is not such a transfer as is contemplated by Section 436–2.0 of the Administrative Code.

" Your application is, therefore, disapproved.

" Very truly yours,
" (Signed) CORNELIUS O'LEARY,
" *Fourth Deputy Police Commissioner.*"

We shall consider first whether there is proof of any circumstances which may properly form a basis for the respondents' conclusion that the alleged transfer of two taxicabs from the Guardian Cab Company, Inc., to the appellant was not a *bona fide* transaction. There can be no doubt that section 436–2.0 of the Administrative Code, which makes provision for the licensing of taxicabs, con-

templates that where a license is surrendered by the vendor and the vendee applies for a new license, a *bona fide* transfer is contemplated. If, in fact, the application is made by the vendee, " A new license shall then be issued by the hack bureau in place of the license so surrendered, provided the applicant has demonstrated to the satisfaction of the hack bureau that he is qualified to assume the duties and obligations of a taxicab owner, as imposed by the provisions hereof * * *." (Administrative Code, § 436–2.0, subd. 7.)

It appears from the appellant's petition that he has been a licensed taxicab driver for eight years, during which time he has been employed by one or more taxicab companies affiliated with Terminal System, Inc., to which it will be convenient to refer as " Terminal." These companies enjoyed concessionary rights to furnish cab service at various railway terminals in connection with which the appellant had the privilege of soliciting cab fares at the Grand Central and Pennsylvania stations. While thus employed and in August, 1939, the appellant, with other employees of Guardian Cab Company, Inc., and Netherland Cab Company, Inc.— two affiliates of Terminal — were told by an executive officer of Terminal that it could no longer operate profitably and was about to sell five hundred and twenty-four taxicabs. The explanation then given for such a sale was that " the operation of these taxicabs by owners of small fleets would make possible substantial economies which could not be effected in a fleet operation of the size of that conducted by the Terminal System affiliates." The appellant claims to have arranged to purchase two taxicabs. His statement is: " I felt that an opportunity to go into business for myself without any cash investment whatever was one that I should not miss." All taxicabs were priced uniformly at $400, payable in daily installments of one dollar and fifty cents and secured by a conditional sales agreement reserving title in the vendor until full payment had been made. The price of the taximeter in each cab was fifty dollars, payable in daily installments of fifteen cents.

It is important to note, however, that, under the arrangement formulated by Terminal, each alleged purchaser — including the appellant, who claims to have purchased from the Guardian Cab Company, Inc.— was required, simultaneously with the execution of each bill of sale, to enter into a non-assignable collateral aggreement with Terminal — not the alleged vendor. Under the agreement executed by the appellant, a copy of which is annexed to his petition, Terminal has agreed to furnish and the appellant has agreed to use, for the sum of one dollar and twenty-five cents per day for each taxicab " which he is purchasing simultaneously herewith " and for any replacement thereof, all facilities for washing and greasing service, meter and battery maintenance, cleaning service for interior of taxicabs, air service for tires, and towing service within the city of New York and twenty-five miles therefrom. Permission is given to the appellant to solicit passengers at taxicab stands located in certain railway and steamship terminals, subject to conditions prescribed by Terminal; to take advantage of supervisory personnel to regulate taxicab traffic at various Terminal concessions and to use the Terminal System insignia and the color scheme employed by Guardian Cab Company, Inc. The collateral agreement also provides that the appellant will purchase all his requirements of gasoline and oil for his two taxicabs and any replacements thereof from a garage maintained by Terminal. In addition the appellant has agreed to use the following facilities which Terminal has agreed to furnish: Tire service at twenty-five cents a day per taxicab and garage facilities at twenty cents a day per taxicab, subject to certain adjustments as the cost of such service varies. To assure compliance with the contracts by which Terminal holds its various concessions and to give uniformity of appearance for all taxicabs permitted to solicit passengers at the various locations, the appellant has agreed not only to abide by all rules adopted by Terminal concerning the use of such concessions, including the maintenance of uniform color scheme and insignia, but also to engage

only those employees who are approved by Terminal as acceptable to those controlling the depots and piers at which concessions are located. The agreement also requires of the appellant " that not later than the expiration of ten (10) months from the date hereof he will purchase a new taxicab of the type, model and style designated by Terminal as standard and uniform equipment for those permitted to use the Terminal concessions. Terminal agrees, provided the Owner is not in default under' any conditional bill of sale covering the taxicabs purchased on or about this date, that it will have available on call throughout the seven-month period commencing approximately ninety (90) days from the date hereof * * * new replacement taxicabs for the Owners, of the type designated by Terminal as standard and uniform equipment, at the list price fixed by the manufacturer." Finally, it is significant that the collateral agreement signed by the appellant is to become effective " when the aforementioned taxicabs are duly licensed for operation as such in the City of New York by the owner, and shall continue during the period that the now existing Terminal concessions remain in effect or until such *later* date of termination as either party may select by thirty days' written notice * * *."

These facts afford convincing proof that the third-party collateral agreement executed by the appellant with Terminal, simultaneously with the execution and delivery by Guardian Cab Company, Inc., of the bills of sale for two taxicabs, was an essential and controlling factor in the transaction which the respondents were asked to consider as a *bona fide* transfer. It cannot be denied that by signing the agreement with Terminal the appellant has deprived himself of certain proprietary rights which ordinarily attach to ownership. Claiming to be a vendee or transferee, the appellant applied for licenses when by his own verified statement it appears that he was possessed of something less than an untrammeled right to control and operate the two taxicabs as owner.

In giving to the Department of Police the power to regulate and control taxicabs through the process of licensing, the legislative purpose was, by such means, to identify accurately the agency responsible for the control and operation of each cab. Such process loses its effectiveness if the licensing official is required to issue a license to an applicant who holds himself out as the owner of a taxicab when concededly, in acquiring title thereto, he has relinquished a substantial measure of its control to another.

If, by reason of conditions existing in the city of New York, the taxicab industry is vested with a public interest and requires regulation, as declared by the legislative finding, we cannot say, as matter of law, that in the circumstances disclosed by the record — with special reference to facts bearing upon the question whether appellant was a *bona fide* transferee — the respondents' action in denying appellant's application for licenses was not within the scope fixed by law for the exercise of their discretion.

The respondents assert, further, in support of their action now challenged, that there is evidence to sustain their finding that the appellant has "not demonstrated that [he is] qualified to assume the duties and obligations of a taxicab owner." In view of the conclusion we have reached, as indicated above, we deem it unnecessary to consider that alleged disqualification. "Before a court may direct that a license shall be issued, it must appear, as matter of law, that *no* valid ground exists for its denial." (*Matter of Elite Dairy Products, Inc., v. Ten Eyck,* 271 N. Y. 488, 493.)

The order should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Order affirmed.